TATE, Judge.
This is a boundary action. The parties own adjoining tracts. At issue is the easterly boundary line of the plaintiff Baudin’s property, which is also the westerly boundary of the defendant Charrier’s property.
*441 The defendant appeals from the trial ■court’s fixing of the boundary between the two estates. His principal contention is that the boundary as fixed by the trial court •deprives him of about five acres to which he had acquired prescriptive title by more than thirty years continuous adverse possession as owner.
Both parties trace their title to a common ancestor, John Charrier, Sr. He had acquired the parent tract of land in 1918, which was described as containing 143 acres. John Charrier, Sr. divided this land into five portions and on December 31, 1921 by five separate sales conveyed them to each of his five children.
The disputed boundary which is the subject of the present litigation is that between the easternmost two tracts. The most ■easterly lot was acquired by Edward Char-rier, the present defendant, which was ■described as containing 33 acres, more or less, “ * * * bounded on the West by land this day sold to Byron Charrier '* * The adjacent lot was acquired hy Byron Charrier, being described as 27 .acres, more or less, “ *■ * * bounded on "the East by land this day sold to Edward ■Charrier * * in 1946, this latter tract was sold by Byron Charrier to Albert Baudin, the present plaintiff.
The evidence shows that the five children ■of John Charrier, Sr. went into possession of their five tracts without the benefit of •a formal recorded survey. There is some ■evidence that the lines between the five tracts were fixed with the aid of a now deceased surveyor, but no record of any such survey could be located. The evidence does ■show, however, the possession lines between the five tracts have approximately the same •general bearing from the Bayou des Glaises ■on the south, running northerly to the rear of the property.
After trial, the District Court fixed the boundary in accordance with the survey of the court-appointed surveyor. On measuring the parent tract, this surveyor discovered that it contained only 134.8 acres instead of the described 143 — -that is, 94% of the described acreage. He, therefore proportionately reduced the acreage of each of the five tracts originally conveyed to the children to 94% of their described acreages and then readjusted the boundaries to reflect this adjusted acreage, even though the boundaries as thus fixed did not at all coincide with the possession lines.
The surveyor thus intended to fix the boundaries between the five tracts in accordance with the rule provided by LSA-Civil Code Article 851:
“If the titles exhibited call for a greater or less extent of land than the land which is to be bounded, contains, the limits must be so fixed as to divide proportionally among the parties interested the profit or loss resulting from this state of things.
"It is understood that the rules prescribed in this and the preceding articles, only take effect in the absence of possession by one or more of the parties, sufficient to establish prescription.” (Italics ours.)
Upon appeal, the defendant-appellant does not question the trial court’s determination of the ideal limits of the two tracts as fixed by the acreages to which entitled by record title. The defendant Char-rier does contend, however, that since 1922 he has continuously possessed as owner and cultivated about five acres of the land within the ideal limits of the plaintiff’s tract. Since the present suit was filed in 1958, or more than thirty years after Charrier’s possession commenced, he claims prescriptive title to this five-acre strip, relying upon the thirty-year acquisitive prescriptions provided by LSA-Civil Code Articles 852 and 3499, which had been pleaded by him in the trial court.
To clarify this contention and the following discussion, we incorporate the sketch denoted as “Exhibit A”, which was copied from the plat of the court-appointed surveyor dated March 10, 1960 and filed as Court Exhibit I in the present proceedings.

*442

*443 The defendant’s fence was constructed shortly before the present suit along a turn-row constructed in 1942, which the witnesses refer to as the “new turnrow”. This is located on Exhibit A along the line shown as “recently constructed fence on turnrow”.
This turnrow was recognized as the boundary between the two estates at the time the plaintiff Baudin purchased Byron Charrier’s tract in 1946. Following his acquisition, Baudin’s possession was limited to the west side of the turnrow, while the defendant Charrier possessed and cultivated each year the land to the east of it. The plaintiff Baudin did not question this as the boundary of his land until in 1956, after his western neighbor following a survey questioned the western line of the plaintiff’s land, whereupon in 1957 upon hiring a surveyor himself Baudin found that he actually possessed about five acres short of the land called for by his title. Hence this suit.
Immediately after his father’s conveyance to him in 1921, the defendant Charrier took possession up to an 8-foot wide turn-row, which the evidence shows had been constructed by the father in 1919 and was intended to mark the limits between the defendant Charrier’s tract and that on the west conveyed to the plaintiff’s vendor, Byron. This turnrow was used by the two proprietors and others as a roadway from the south of the property to the Prairie Bayou at the turnrow’s northern end. (The “old turnrow” is shown as “former turn-row” on Exhibit A.)
The uncontradicted evidence shows that this old turnrow was without protest recogí nized as the boundary between the two tracts from 1922 to about 1941. Byron Charrier cultivated the land west of it, and the defendant cultivated the land east of it. Neither claimed any share of the crops raised by the other on their respective sides of the turnrow.
In 1940, Byron Charrier built a bridge at the northern end of this old turnrow in order to provide access to the land across the Prairie Bayou. ■ (See “old bridge” on Exhibit A.) Right after the bridge was built, the defendant told his brother Byron for the first time that the true boundary line between the tracts was really slightly further west, its northern point evidenced by a marked pecan tree north of Prairie Bayou. In 1942, Byron Charrier consented to the moving of the boundary a little westward into his land. This new boundary was marked by the new turnrow, along which the defendant’s present fence was built shortly before this suit. At its northern end, the new turnrow is about thirty feet west of the old turnrow.
The former location of this old turnrow can no longer be seen upon the ground, since it was plowed up following construction of the new turnrow. However, its former location can be ascertained from official aerial photographs taken in 1941, and it can easily be reconstructed, since the evidence shows that it ran in a straight line from an iron stob marking the southern end of the new turnrow up to the still-existing old bridge (see Exhibit A) constructed by Byron Charrier across the Prairie Bayou in 1940.
Before this court, the defendant-appellant now concedes that he did not possess up to this fence line along the new turnrow for the requisite thirty years. He now contends only that, although his pleas of thirty years’ prescriptive possession of all the land east of this “new turnrow” must fail, nevertheless the evidence clearly shows that he did acquire prescriptive title by continuous possession as owner for more than thirty years of so much of the land as is east of the “old turnrow”.
The undisputed evidence undoubtedly shows that the defendant Charrier took possession of the land east of and up to the old turnrow in 1922, and that he continuously and without interruption possessed same as owner up until the institution of the present suit. He cultivated the crops annually by himself or through tenants, and he built upon this strip of property a barn which is still standing.
*444 The trial court overruled the defendant’s pleas of thirty years’ acquisitive prescription. In rejecting the claim to prescriptive title up to the old turnrow, the trial court apparently held that prescriptive title by thirty years’ adverse possession cannot be acquired unless during such period of time a visible boundary between the two estates is continuously maintained at the same location. (It is to be remembered that, after marking the separation between the two estates for twenty years, the old turnrow was plowed up when the dividing line was moved about thirty feet further west into the plaintiff’s tract when the new turnrow was constructed in 1942.)
In so holding, our learned trial brother relied upon expressions in the jurisprudence interpreting the thirty years prescription provided by Article 852.[1] See Sessum v. Hemperley, 233 La. 444, 96 So.2d 832, noted at 18 La.L.Rev. 742 (1958) and 32 Tul.L.Rev. 324 (1958); Opdenwyer v. Brown, 155 La. 617, 99 So. 482. See also Chaney, “Prescription under Article 852”, 13 La.L.Rev. 582 (1953).
However, in addition to a prescriptive title under Article 852, the defendant-appellant also pleads and claims acquisition by prescriptive title by thirty years uninterrupted possession as owner under the provisions of Article 3499 et seq.[2]
As the Opdenwyer decision and the above-cited law review commentaries note, there are several distinctions between the thirty-year prescriptions provided respectively by Article 852 and by Article 3499. Under Article 852, for instance, tacking of successive possession is permitted whether or not the land in dispute is mentioned in the title description of the person pleading the prescription, while a contrary rule obtains in the case of a person pleading the acquisitive prescription under Article 3499. Cf. also Stutson v. McGee, 241 La. 646, 130 So.2d 403. Also, an informal acknowledgment of encroachment may not be sufficient to interrupt prescription under Article 852, although it might have the contrary effect under Article 3499. Cf., Note, 18 La.L.Rev. 742, 745.
Yet a third distinction appears to be that, while Article 852 has as its primary purpose the recognizing of the stability of long-established visible boundaries, the prescription under Article 3499 is based primarily upon the recognition of ownership of land “actually possessed” for thirty years with *445 out reference necessarily to any visible boundary, however useful such may be in determining with certainty the just limits of the actual possession.
In urging that a visible enclosure is necessary for prescriptive title also under Article 3499, as well as under Article 852, able counsel for the plaintiff-appellee rely upon the statement in Prevost’s Heirs v. Johnson, 9 Mart. (O.S.) 123 that “ * * * When a person claims by possession alone, without showing any title, he must show an adverse possession by enclosures, and his claim will not extend beyond such enclosures.”
The subsequent jurisprudence has made it plain, however, that the Supreme Court intended by the quoted statement only to hold “that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof,” Hill v. Richey, 221 La. 402, 59 So.2d 434, 440. See also Watson v. Crown Zellerbach Corp., 240 La. 500, 124 So.2d 138; Continental Land & Fur Co. v. Lacoste, 192 La. 561, 188 So. 700; Ranger Land Co. v. Story, La.App. 1 Cir., 1 So.2d 410.
The cited decisions show that to acquire prescriptive title under Article 3499 it is not necessary to fence or enclose the land occupied, providing that the land is actually possessed without interruption for the requisite duration of time. And, although clearly recognizable limits are necessary in order to fix the just extent of this adverse possession and often are indicative of the nature of the possession, there is no codal or jurisprudential requirement that they be situated at the identical location throughout the thirty years; although, of course, if the lines defining the limits of the possession have shifted during such period, the possessor’s prescriptive title must be confined to the land within only such limits as those to which he has proved actual adverse possession for the full thirty years.
Specifically, with regard to the present facts, the public was placed on full notice of the nature and extent of the possession of the defendant Charrier of all the land up to the old turnrow from 1922 to the date of suit, as well as of the additional strip between the old and the new turnrows during the sixteen years following 1942. His claim of ownership of the land was published to all the world by the dominion he exercised by cultivating the entire tract up to these turnrows without recognition of any right in his neighbor to claim a share of the crops there raised, by his maintaining the southern fences, and by his constructing a barn upon said property.
As to the strip west of the old turnrow— that is, the narrow triangular strip between the old and the new turnrow — , his claim to prescriptive title must fail because he did not possess same for the full thirty years required by the codal provision.
But as to the strip east of the old turnrow, the defendant Charrier has affirmatively established corporeal possession of the land east of the old turnrow from 1922 up until the filing of this suit in 1958, thirty-six years later. He has established uninterrupted, actual, public possession as owner within such limits. The extent of his possession could be fixed with certainty and was sufficient to give definite notice to all the world that he possessed as cultivating owner up to such limits. Charrier has thus met all the codal requirements necessary to obtain prescriptive title under Article 3499 to such land east of the old turnrow.
The .plaintiff-appellee finally contends, however, that Charrier’s holding of the land east of the old turnrow was not adverse possession within the meaning of the codal article, but was rather mere occupancy by sufferance between neighbors, pending final determination of the actual boundary. Cit *446 ed in support of this contention is Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411.
The holding in Williams v. Bernstein concerned only the ten year boundary prescription provided by Article 85J. It does not even apply to the thirty year boundary prescription of Article 852. See Ses-sum v. Hemperly, above-cited. (As noted in DeBakey v. Prater, La.App. 1 Cir., 147 So. 734, the presumption applied in deciding the ten year prescription to the effect that the division was only temporary and tenative, yields to the opposite presumption in deciding the thirty year prescription that, by such long continued separation, the parties recognized such division of the estates to be permanent.)
In the present case, we are simply called upon to decide whether, for purposes of acquiring prescriptive title under Article 3499, the defendant-appellant actually possessed as owner all of the land east of the old turnrow for thirty years without interruption. The evidence unequivocally indicates that he did so. The defendant’s prescriptive title within this clearly defined limit is not defeated by the circumstance that, for some 16 years during the time, he additionally cultivated and possessed zvest of the old turnrow even more land.
We thus reach the conclusion that the defendant-appellant has proved that he actually possessed for more than thirty years, and thus acquired prescriptive title to, the land west of and beyond the limits of his record title (as fixed by the trial court) up to the old turnrow. However, the evidence does not preponderantly show that Charrier possessed as owner any land south of the southern fence line along the gravelled road along Bayou des Glaises to the south of his tract, or north of Prairie Bayou at the northern end of the old turnrow. (His cultivated field commenced at the road on the south and ended at the latter bayou on the north.)
The plaintiff’s prescriptive title is thus limited to that strip of land west of his title line which is: bounded at the west by the east edge of the old turnrow; at the south by the defendant’s south fence line along the gravelled road along Bayou des Glaises; and at the north by the south bank of Prairie Bayou, starting at the “old bridge” on Exhibit A and running easterly along the meander line of such bayou up to the defendant’s west title line as fixed by the trial court.
We affirm, therefore, the trial court’s finding as to the location of so much of the boundary line as is south of the defendant’s southern fence line along the gravelled road and as is north of the south bank of Prairie Bayou, which portions of the boundary line are correctly located in accordance with the record title of the parties as fixed by the plat by the court-appointed surveyor dated March 10, 1960 and filed as Court Exhibit I in the present proceedings. But having reached the conclusion that, for the remainder of the boundary between the estates, the defendant-appellant has proved a prescriptive title up to the eastern edge of the old turnrow, we must nevertheless remand the case because the present record does not contain sufficiently definite evidence concerning courses and distances as to permit us to fix the exact location of this portion of the boundary between the parties. (The record does show, however, that the location of the old turnrow can be re-established.)
These proceedings will therefore be remanded for additional evidence to he educed to establish the location of the boundary between the parties in accordance with the views above expressed. The cost of this appeal is assessed against the plaintiff-appellee. All other costs of these proceedings incurred to date will be assessed one-half to the plaintiff-appellee and one-half to the defendant-appellant. See LSA-C.C. Art. 663; LSA — C.C.P. Art. 2164.
Affirmed in part: Reversed and remanded in part.

. Art. 852. “Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.”

. Art. 3499. “The ownership of immova-bles is prescribed for by thirty years without any need of title or possession in good faith.”
Art. 3500. “The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner.”
Art. 3501. “The possession necessary for this species of prescription, when it has commenced by the corporal possession of the thing, may, if it has not been interrupted, be preserved by external and public signs, announcing the possessor’s intention to preserve the possession of the thing, as the keeping of roads and levees, the payment of taxes, and other similar acts.”
Art. 3502. “A man may even retain the civil possession of an estate, sufficient to prescribe, so long as there remain on it any vestiges of works erected by him, as, for example, the ruins of a house.”
Art. 3503. “How favorable soever prescription may be, it shall be restricted within just limits. Thus, in the prescription of thirty years, which is acquired without title, it extends only to that which has been actually possessed by the person pleading it.”