390 So.2d 543 (1980)
Bertha J. McPHERSON et al., Plaintiffs-Appellants,
v.
Eldred L. ROY, Defendant-Appellee.
No. 7824.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1980.
Rehearing Denied December 1, 1980.
*545 Smith, Taliaferro, Seibert, Boothe & Purvis, V. Russell Purvis, Jonesville, for plaintiffs-appellants.
Reeves & Owens, R. R. Reeves, Jr., Harrisonburg, for defendant-appellee.
Before GUIDRY, SWIFT and DOUCET, JJ.
GUIDRY, Judge.
This matter, which bears our docket number 7824, was consolidated for purposes of trial with a suit entitled Roy v. McPherson et al., 390 So.2d 555, our docket number 7825. These cases remain consolidated on appeal and we render a separate decision in the latter suit this date.
Plaintiffs in this matter who are the defendants in the companion suit, our docket number 7825, are Bertha J. McPherson, Marjorie White Book and W.E. White. We refer to these parties hereafter as McPherson-White. The defendant in this matter is the plaintiff in the companion matter. McPherson-White and Eldred Roy are adjoining property owners of lands situated in Sections 27 and 28, T. 4 N., R. 6 E., Catahoula Parish, Louisiana. Both suits were instituted as the result of a dispute over the common boundary between their respective properties in the vicinity of SW ¼ of SE ¼ Section 28, T. 4 N., R. 6 E.
In suit number 7824 McPherson-White initially asserted a possessory action as to a portion of the SW/4 of SE/4 of Section 28. In their original petition McPherson-White sought to be maintained in possession of the disputed tract, requested the issuance of a preliminary injunction and in addition prayed for damages for the alleged unlawful destruction of their fences and crops.
This suit was filed on June 16, 1978 and is hereafter referred to as the McPherson-White suit. On June 26, 1978, Roy filed answer to the McPherson-White suit generally denying the allegations of plaintiffs' petition and on the same day filed the suit which bears our docket number 7825. In this latter suit, hereafter referred to as the Roy suit, plaintiff sought the same relief, as to the same property, as did the plaintiffs in the McPherson-White suit except Roy did not seek issuance of a preliminary injunction.
On July 3, 1978 a hearing was held in the McPherson-White suit on the rule for issuance of a preliminary injunction following which a judgment was entered granting the preliminary injunction but allowing the defendant, Roy, to farm the disputed acreage for the crop year 1978 subject to his obligation to deposit all proceeds derived therefrom in the registry of court. In this judgment the trial court, on its own motion, ordered that the McPherson-White suit be converted to a boundary action and appointed one, James Tooke, a registered land surveyor, to survey the boundaries in question. Subsequent to the rendition of this judgment Roy filed a petition for rule seeking a rescission of said judgment insofar as it ordered the suit converted to a boundary action, however, before a hearing on this rule McPherson-White by supplemental and amending petition specifically sought, as additional relief, a judicial fixing of the boundary between their property and that of the defendant Roy in SW/4 of SE/4, Section 28, T. 4 N., R. 6 E.
In a supplemental petition filed in the Roy suit on July 26, 1978 the plaintiff amended his original petition so as to assert a possessory action against McPherson-White as to three additional tracts, i. e., a small strip located in W/2 of SW/4, Section 27, T. 4 N., R. 6 E., designated on the Tooke survey as Tract "B"; a 2.77 acre tract in NW/4 of SE/4 and NE/4 of SW/4, Section 28, T. 4 N., R. 6 E., designated on the Tooke survey as Tract "C"; and, a .19 acre tract in S/2, Section 27, T. 4 N., R. 6 E., designated on the Tooke survey as Tract "A-1".
Finally, on April 16, 1979, the defendant Roy filed a peremptory exception of acquisitive prescription in the McPherson-White suit asserting his acquisition of the property described in the McPherson-White suit under the acquisitive prescription of 10 years *546 as provided for by C.C. Article 3474. This one tract which is common to both suits contains 12.6 acres and is shown on the Tooke survey as Tract "A".
In this posture the suits were tried. During the trial of these consolidated matters, although title was not at issue in either and the only boundaries sought to be fixed were those separating the properties of the parties in the vicinity of SW/4 of SE/4 Section 28, plaintiffs and defendants in both suits stipulated as to the possession and ownership by Roy of the three additional tracts described in his supplemental and amended petition and likewise stipulated to the correctness of the Tooke survey insofar as it located the division lines between several tracts of land owned by the parties in Sections 27 and 28 T. 4 N., R. 6 E., EXCEPT that the parties were unable to reach agreement as to the land in SW/4 of SE/4 Section 28, described and referred to in the original petitions filed in both suits. Following trial, considering the previously mentioned stipulation, the sole issue remaining concerned location of the boundary lines between the respective lands of the parties in the vicinity of SW/4 of SE/4 Section 28 and which of the adverse claimants was entitled to a judgment of possession as to the disputed acreage.
The trial court rendered judgment dismissing all demands of plaintiffs in the McPherson-White suit, except that the boundaries of the several properties owned by the adjoining owners in Sections 27 and 28 T. 4 N., R. 6 E., were fixed pursuant to the Tooke survey.[1] Judgment was rendered in favor of plaintiff in the Roy suit recognizing his right to the ownership and possession of all properties therein described, including the land in SW/4 of SE/4 Section 28, and awarding him the sum of $349.91 held in the registry of court and representing the proceeds from crop sales allocable to the disputed acreage in SW/4 of SE/4 Section 28.
McPherson-White took devolutive appeals in both suits and in brief question only that part of the trial court judgment which fails to recognize the common boundary between their property and that of Roy in SW/4 of SE/4 Section 28 as being the fence line shown on the Tooke survey between the points "E" and "F" and a southerly projection thereof to the south line of SW/4 of SE/4 Section 28. We annex hereto as appendix 1 an extract from the Tooke survey showing the respective locations of the McPherson-White and Roy properties and the area in dispute.
Before proceeding to a discussion of the facts and the contentions of the parties we observe that in the McPherson-White suit the plaintiffs have cumulated the possessory action with an action to establish boundary. In the early case of Ebarbo v. Stacey, 16 La.App. 248, 133 So. 793 (La. 1931) our brethren of the second circuit held that a plaintiff who brought a possessory action could not convert such action into one of boundary. Likewise, in the recent case of Harvey v. Harvey, 345 So.2d 113 (La.App. 1977) our brethren of the 1st Circuit confirmed the trial court's judgment sustaining an exception of improper cumulation of actions when the defendants attempted to cumulate the petitory and boundary actions. Our Supreme Court refused writs in Harvey, 347 So.2d 246 (La. 1977) with the following comments:
"Writ denied. The result is correct. Denial herein is without prejudice to applicant to bring boundary action.

DIXON, J., concurring in the denial, is of the opinion that defendant, plaintiff in reconvention, was entitled to cumulate petitory action with boundary action, and, to the extent that the court of appeal ruled otherwise, it was in error. Defendant, plaintiff in reconvention, is entitled *547 to locate the land on the ground and our action permits him to do that, if there remains a dispute."

We pretermit any further discussion of this procedural question and consider both actions to be viable in that even if improperly cumulated under LSA-C.C.P. Articles 461 et seq., the defendant Roy by failing to timely object has waived his right to question the cumulation of such actions. LSA-C.C.P. Articles 926 and 928.
McPherson-White contend that the eastern boundary of their property extends into SW/4 of SE/4 Section 28 to the fence line shown on appendix 1 between the points IV-F and a southerly projection thereof to the south line of Section 28 (points F to III) and that they own all property in SW/4 of SE/4 Section 28 west of that line. On the other hand Roy contends that the boundary between his property and that of McPherson-White is the west line of SW/4 of SE/4 Section 28 T. 4 N., R. 6 E., as shown on the Tooke survey.
In support of the actions filed by them, McPherson-White assert that they and their ancestors in title have been in open, notorious and continuous possession of the disputed property up to the fence line and projection thereof from the year 1909 to June 14, 1978, on which latter date Roy allegedly destroyed such fence and entered upon the disputed property. Thus they argue that the eastern boundary of their property is the fence line and a projection thereof by virtue of 30 years prescription (C.C. Article 794, former C.C. Article 852) and therefore they are owners and should be recognized as such and restored to the possession of that part of the disputed property lying west of the aforementioned fence and projection thereof. On the other hand Roy disputes the McPherson-White assertion of possession as to that portion of the disputed tract lying west of the fence line and/or projection thereof and south of the tree line. Further, although Roy does not seriously contest the fact that McPherson-White and their ancestors in title have had open and continuous possession of that part of the disputed tract west of the fence and north of the tree line since the year 1909, he contends that the possession exercised by them over the disputed tract since October 3, 1967 was exercised by them on his behalf by virtue of a lease granted by his ancestor in title to Bertha McPherson and Jack White, which lease specifically described and included SW/4 of SE/4 Section 28 T. 4 N., R. 6 E. Thus Roy argues that the division line between his property and McPherson-White must be fixed at the ideal location, i. e., the west line of SW/4 of SE/4 Section 28 because (a) McPherson-White had not sufficient possession of the area west of the fence and projection thereof south of the tree line; and, (b) whatever rights they may have previously acquired in the area north of the tree line were abandoned by McPherson-White and/or usurped by Roy and his ancestor in title by virtue of possession under the aforesaid lease and in any event Roy acquired title to the latter area by virtue of such possession under the provisions of C.C. Article 3474. Additionally, he argues that by virtue of the possession exercised under the aforesaid lease he is entitled to judgment in the Roy suit maintaining him in possession of the disputed tract.
The trial court in written reasons for judgment set forth the title history of the disputed tract and adjoining properties, as well as his findings and conclusions as to possession and occupation of the disputed tract. We take the liberty of quoting in part therefrom:
". . .
The involved property is part of a larger tract known as the Allen Parker tract or Allen Parker estate land. The Allen Parker tract is divided into two noncontiguous tracts by another parcel of property known as the C. V. White property.

. . . . .
The Allen Parker estate lands are outlined in yellow on the annexed exhibit. (See Appendix 1) The C. V. White estate separating the Allen Parker tract is outlined *548 in blue and green on the annexed plat. (See Appendix 1). This property was owned by C. V. White prior to 1909. In that year he sold the property outlined in blue to Emmanuel (Man) White and the property outlined in green to Rozelia (Zeal) White. (See Appendix 1). According to the witnesses Man White and Zeal White used as a dividing line between their respective properties a fence which is located along the line marked in pink or red on the annexed plat which said fence line is easterly of the true line between the respective properties as described in their deeds. (Line marked E-IV-G-F on Appendix 1). This had the effect of Man White actually occupying a portion of the property of which Zeal White had title. As indicated on the plat the fence between Man and Zeal White extended southerly for some distance into the property subject of this litigation, and the best evidence indicates that it tied in to a fence running east and west along the south edge of the cultivated ridge near where the tree line exists on the attached plat.
I have inspected the property and examined all of the maps, including aerial photos and topographic maps. The physical characteristics of the land have to be considered in interpreting the testimony of the various witnesses. The center line of the road shown on the annexed plat runs approximately along the center of a ridge which runs in a general easterly westerly direction through the property although it veers slightly to the southwest and northeast. The south edge of the ridge is defined by a tree line shown on the annexed plat. At the time of my inspection (this inspection occurred in the presence of counsel on September 18, 1979) the property north of the tree line was farmed in row crops. South of the tree line there was a sizable growth of willow trees and a lower area, some of which still contained water even though we had suffered a considerably extensive dry period during this time. There was evidence in this area that the property south of the tree line had at one time been cleared of heavier timber, but there existed no present signs of actual cultivation. South of this area was an even lower area covered by water which formed the main body of White's Lake. On the north edge of White's Lake there was evidence of old trees and heavier timber that apparently had been pushed into this area and there also was some evidence of there having been a fence.
Man White and Zeal White lived on their respective properties and farmed up to the fence for many years. Man White farmed along the ridge line north of the tree line west of the fence. Man White sold the property owned by him ... to L. R. Denney in 1945. L. R. Denney then sold the same land to Walter White in 1949. Bertha White McPherson is the widow of Walter White and (sic) Marjorie White Book and W. E. White are two of his children. The other children of Walter White had sold their interest to Bertha McPherson.
Walter White occupied the property from 1949 until his death in late 1965 or 1966. Jack White, one of Walter White's sons, farmed the property with his father until his father died. After his father died Jack White continued to farm the property by agreements with Mrs. McPherson and the other heirs until 1972 when he sold all of his interests in this area to Mrs. McPherson. Meanwhile, Mrs. McPherson and Jack White acquired a lease from the Allen Parker heirs covering the entirety of the Allen Parker estate.1 This lease describes the disputed property. In none of the documents whereby the property ... was conveyed by Man White to L. R. Denney, from L. R. Denney to Walter White and by Walter White to his heirs, was there any reference to the disputed property. All of these instruments used the description contained in the deed from C. V. White to Man White.... Accordingly, there is no conflict in the record titles of the two respective tracts of land.
1 This lease is dated October 3, 1967.
The property south of the tree line was cleared by Jack White after execution of *549 the Parker lease sometime in the late 1960's, and according to his testimony, an attempt was made to farm it. This was not successful and the property has grown up again in recent years to the condition which it had at the time of my inspection. South of that area is the fence erected by Jack White at the time of the clearing along the north bank of White's Lake, some slight evidence of which I found on the date of my inspection. Actually, all of the property south of the tree line could be generally designated as White's Lake and is no doubt covered by water for extensive periods of the year.
There are no present signs of any fence along the edge of the ridge at the tree line because it obviously would have been destroyed when Jack White cleared the area and attempted to extend the cultivated land south to the edge of White's Lake. Prior to the clearing this area was heavier wood land and it is significantly lower in elevation than the land north of the tree line.
Several of the witnesses testified that the fence that they remembered on the south of the cultivated area ran along the edge of the cultivated field and that the road they remembered lay south of that. Any road south of the fence which Jack White erected along the edge of White's lake after the clearing operation in the 1960's would have been totally useless because even in dry weather it would have been marshy lake bottom covered by water.
The old road referred to by these witnesses had to be south of the present willow tree line which at that time was heavier timber. Even at that location where it would have been considerably higher than the more southerly location, it would have been useful only during dry weather and periods of low backwater.
Aerial photographs introduced into evidence exhibit the three types of property described above and confirm the findings which I have stated above.
The testimony leads me to the opinion that the White family did farm and possess that portion of the property under litigation located along the ridge, that is north of the tree line, extending easterly into the subject property to the southerly extension of the fence dividing the Man White and the Zeal White tracts which they refer to .... The possession exercised by the Whites consisted of farming the property in row crop farmland.
Although there was some testimony to the fact that Man White used the property between the high ridge and the lake bottom as pasture land, there is no evidence that this type of possession extended easterly to cover the property in question. It is my opinion that most of this testimony referred to that portion of the property fronting White's Lake which Man White owned himself lying west of this property. I do not find that the Whites exercised any appreciable possession on that portion of the disputed property between White's Lake proper and the edge of the ridge marked by the tree line, the first possession being that exercised by Jack White when he conducted the clearing operation along the lake bank. It should be noted here that clearing the Allen Parker tract was one of the obligations or considerations for the lease which Jack White and Bertha McPherson had obtained from the Allen Parker heirs. Any possession by the Whites prior to this time was not of any significance in this case in my opinion because, as contrasted to the row crop land, this possession was not open, continuous and public.

(2)
The public records of Catahoula Parish do not reflect any conflict with respect to this property until the filing of the subject litigation. The disputed property is included within all of the descriptions of the various documents affecting the Allen Parker tract which are in the record, including the actual conveyances of the property as well as other documents such as oil, gas and mineral leases, timber sales, royalty deeds and the predial lease executed in 1967. On the other hand all of the documents reflecting the *550 conveyances and other matters applicable to the Walter White estate and Man White properties are consistent and do not in any manner conflict with or overlap the descriptions of the Allen Parker properties. Even after they had exercised possession of a portion of the disputed property, as herein set forth, for a number of years, the Whites made no effort to describe it in their various legal documents.

. . . . .

(3)
It is my opinion that the evidence shows that that portion of the property in dispute... (being the open cultivated ridge land) has been openly and notoriously possessed by Emmanuel White from approximately 1909 when he acquired property to the north and west thereof from his father C. V. White to 1945. On that date White sold his property (but not by description (sic) the property in dispute) to Leroy Denney who continued the possession until 1949 when he conveyed his property (again not describing the disputed property) to Walter White. The possession was continued by Walter White until his death in late 1965 or 1966. After Walter White's death, his widow, Bertha McPherson, and son Jack T. White farmed the Walter White property as owners and by verbal rental arrangements with their co-heirs until 1972. At this time, Jack T. White sold his interest in the Walter White estate to Bertha McPherson who acquired the interests of all the Walter White heirs except for Marjorie White Book and W. E. White. After 1972 the Walter White estate was farmed by A. V. Parker (no connection with the Allen Parker heirs or estate) under some verbal arrangement with Mrs. McPherson, Marjorie White Book and W. E. White.
The possession of these parties of the portion of the disputed property ... was beyond the bounds of their record title up to visible bounds consisting of southerly extension of the fence dividing the Emmanuel White property from the Zeal White property on the east and the south edge of the cultivated ridge shown as a wood line on the annexed plat. As heretofore noted, it is my opinion that the best evidence is that prior to the clearing of the property to the south by Jack White in 1967 after the Parker lease had been executed that a fence existed in the general area of this wood line which divided the cultivated ridge from the wood land on the south and at that time the fence constituted with the Zeal White fence on the east the visible bounds up to which the Whites exercised possession...."
We find the trial judge's scholarly analysis of the facts to be fully supported by the record.
Considering the above facts our learned trial brother concluded that Roy was entitled to a judgment maintaining him in possession of the entirety of the disputed tract because (a) he had shown sufficient possession of the area of the disputed tract south of the tree line under the Allen Parker lease; and, (b) although, if the situation which existed prior to 1967 had continued to date McPherson-White would be entitled to a judgment maintaining their rights to possession of that part of the disputed tract north of the tree line and west of the Man White-Zeal White fence, with recognition of the fence and tree line as the east and southern boundaries thereof, upon acceptance of the Allen Parker lease in the year 1967 and by operating thereunder, McPherson-White effectively waived and abandoned all rights previously acquired in such property and the possession exercised over such property was under said lease and enured to the benefit of Roy.
We agree that the record supports the conclusion that Roy is entitled to a judgment maintaining him in possession of that part of the disputed area south of the tree line shown on the sketch annexed hereto as appendix 1. However, we conclude that the trial court erred in its determination that McPherson-White are not entitled to a judgment maintaining them in possession of the remaining portion of the disputed area and a judgment fixing the east and south *551 boundaries of the property as the Man White-Zeal White fence and the tree line, respectively.
Under C.C. Article 794, formerly Article 852, "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." In the recent case of Fruge v. Lyons, 373 So.2d 220 (La. App. 3rd Cir. 1979) we stated:

"Under LSA-C.C. art. 3499, the possession of the predecessors in title cannot be added to that of the present possessor, unless the title of the present possessor includes the property in dispute, else there is no privity of estate such as is necessary to make up the thirty years adverse possession `as owner'. Stutson v. McGee, 241 La. 646, 130 So.2d 403; Comment, `Tacking of Possession for Acquisitive Prescription', 8 La.L.Rev. 105 (1947). On the other hand, under LSA-C.C. Art. 852, the tacking of successive possessions up to the established visible bound between two estates is permitted, whether or not the land in dispute is included within the title description of the party pleading prescriptive title under this article. Opdenwyer v. Brown, 155 La. 617, 99 So. 482; Mills v. Butler, La.App., 1 Cir., 131 So.2d 262; Henly v. Kask, La.App. Orl., 11 So.2d 230. See also Chaney, Prescription under Article 852, 13 La.L.Rev. 582 (1953), and Baudin v. Charrier, La. App., 3 Cir., 137 So.2d 440.

This holding was again followed in a petitory action considered by this court in Dubois v. Richard, 223 So.2d 198 (La.App. 3rd Cir. 1969). This position regarding tacking was recently affirmed by this court in a boundary action applying new Article 794 of the Civil Code. Leblanc v. Laborde, supra.

Hence, we arrive at the conclusion that under either old Civil Code Article 852 or new Civil Code Article 794, a possessor without good faith may tack on to his own possession that of his ancestors in title in order to make up the required thirty years adverse possession...."
As earlier noted the record reflects that McPherson-White and their ancestors in title maintained unequivocal, open and uninterrupted possession of the disputed strip north of the tree line and east to the Man White-Zeal White fence from the year 1909. Therefore, on the date the Allen Parker lease was executed, i. e., October 3, 1967 title to this area vested in McPherson-White under the prescription of 30 years as provided by C.C. Article 794, formerly 852. Although the prescriptive title thus acquired by McPherson-White was subject to divestiture by renunciation under C.C. Articles 3460, 3461 and 3471, we do not consider that the acceptance by Bertha McPherson and Jack T. White of a lease covering the Allen Parker Estate lands (which included SW/4 of SE/4 Section 28) can be considered as an express or tacit renunciation of the McPherson-White prescriptive title to that part of the disputed property over which they and their ancestors in title exercised possession for a continuous period of 58 years before execution of the lease. Our jurisprudence, interpreting the provisions of the cited articles, has consistently held that a renunciation of accrued prescription to be effective must be unequivocal and takes place only when the intent to renounce is clear, direct and absolute and made manifest either by words or actions of the party in whose favor prescription has run. Corsey v. State, Through the Department of Corrections, 366 So.2d 964 (La.App. 1st Cir. 1979) reversed on other grounds, 375 So.2d 1319 (La.1979), and cases therein cited. Clearly, the granting and acceptance of the Allen Parker lease did not operate as a renunciation of the prescriptive title to the undivided interests in the disputed property owned by Marjorie White Book and W. E. White, for the latter were not parties to such lease. Nor do we consider the execution of the lease and operations thereunder by Bertha McPherson and Jack T. White as constituting a renunciation *552 of their prescriptive title to their respective undivided interests in the disputed property. The record in this case reflects that from the year 1909 that portion of the disputed property north of the tree line and west of the Man White-Zeal White fence was always considered to be the property of Man White and his successors in title. It was known and considered as such when the Allen Parker lease was executed in October of 1967. Thereafter, during the entire term of the lease, all accountings for the crops grown and harvested on the area in question were made to McPherson-White. Both Bertha McPherson and Jack White testified that it was never their intent to lease from the Allen Parker Estate the portion of the disputed tract north of the tree line and west of the Man White-Zeal White fence. A. V. Parker, who farmed the White properties and the properties leased by McPherson-White from the Allen Parker Estate following Jack White, testified that he farmed the property in dispute (north of the tree line and west of the fence) under a verbal arrangement with McPherson-White and made accountings to them for the crops grown thereon. That McPherson-White never had any intention of renouncing their prescriptive title to the disputed property is best manifested by the fact that five days following Roy's destruction of the old fence McPherson-White instituted this possessory action.
In sum we conclude that by acceptance of the Allen Parker lease as lessees in October of 1967 Bertha McPherson and Jack White did not manifest an intention to renounce their prescriptive title to that part of the disputed area north of the tree line and west of the Man White-Zeal White fence.
For these same reasons we find that the trial court erred in concluding that the farming operations conducted by Bertha McPherson and Jack White on the disputed property north of the tree line and west of the fence after October of 1967 constituted possession of that property under the Allen Parker Estate lease, enuring to the benefit of Roy and sufficient to enable him to file and maintain a possessory action and/or sufficient for sustaining his plea of ten year acquisitive prescription under LSA-C.C. Article 3474.
It is clear from the record that long prior to execution of the October 1967 lease Man White and his successors in title possessed the entirety of the disputed property north of the tree line and west of the fence. It was being so possessed in October of 1967 by Bertha McPherson and Jack White for themselves and under a verbal lease arrangement with their co-heirs. It continued to be so possessed up until the entry upon said property by Roy on June 14, 1978, unless it be concluded, as did the trial court, that following execution of the lease the operations conducted upon such property were for the benefit of Roy. We cannot agree with this finding.
The possession required to maintain a possessory action is the same as that required to commence the running of acquisitive prescription. Liner v. Louisiana Land & Exploration Company, 319 So.2d 766 (La.1975). Under our law there are two distinct things that are requisite to the acquisition of possession, (1) the intention of possessing as owner; and, (2) the corporeal possession of the thing. C.C. Article 3436. One may possess a thing not only by one's self, but also by other persons. C.C. Article 3433. However, in order for one to acquire possession of a thing through the acts of a third person, it must be made to appear that such third person knowingly and intentionally assumed and held possession as a precarious possessor and for the benefit of his principal.
C.C. Article 3438 provides:

"One may acquire possession of a thing, not only by himself, but also through others who received it for him and in his name. But in this case it is necessary that the person receiving the possession should have had intention of receiving for the other." (Emphasis ours).

*553 C.C. Article 3441 provides:
"Those who possess, not for themselves, but in the name of another, as farmers, depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another."
C.C. Article 3445 provides:

"To enable one person to obtain possession for another, it is necessary that he should have such intention in making the acquisition; but in preserving the possession for another, it is not necessary that this intention should continue to exist...." (Emphasis ours).

Section 2269 of Plainol's Traite Elementaire De Droit Civil states as follows:
"Is it necessary that the two elements of possession be united in the very person who is become the possessor? A distinction must be drawn between the element of intent and the physical element.
(1) The element of intent, the intention of becoming possessor, is in principle, necessary in the very person who is to possess. The will of a third person cannot make a man a possessor without his knowing it. Nevertheless, in the case of persons who are incapable of having an animus of their own, such as insane persons and children, it had to be held that possession could take place in their favor through the animus of another. They borrow, as it were, the animus of their representatives.
(2) The physical element is governed by a contrary principle. It is never necessary that the acts of enjoyment, which make up the possession, be carried out by the possessor in person. It has always been recognized, and this was admitted by the Romans, that possession may be taken of a thing `corpore alieno', that is to say through the intervention of any representative, a mandatory, an agent, etc. Whenever this person takes possession of the thing in the name of another intending to make this other person acquire it, possession is acquired by the latter, if the latter so desires."
Equally well established in our law is the principle that a person who commences his possession with the intention of holding for another, though he later entertain the intention of no longer holding for that other, but for himself, is presumed to hold possession for the person for whom he originally took it. C.C. Article 3446.
Thus our civil code provisions make it clear that one acquires the benefit of anothers corporeal possession of a thing only if it be established that the possessor actually intends at the moment he assumes possession of the thing to hold for the former and not for himself.
In the instant case the only evidence that the possession of the disputed land by Bertha McPherson and Jack White was intended to benefit Roy is the fact that the whole of SW/4 of SE/4 Section 28 is described, along with many other properties, in the lease to them of the Allen Parker Estate lands. This single factor in our opinion falls far short of establishing the necessary requisite that they intended to possess under the Allen Parker lease when contrasted with all of the other circumstances established by the record and in particular the factual circumstances alluded to previously. Additionally, it would be preposterous to presume that Bertha McPherson and Jack White would intentionally possess adverse to themselves property which they themselves owned and which had been in their family since the year 1909.
We do not consider that our decision in this case contravenes the rule, well established in our jurisprudence, to the effect that a tenant in possession cannot contest his landlord's title. In the cases so holding the contest arose during the term of the lease and the original possession of the lessee commenced under the lease. The instant case is clearly distinguishable. *554 McPherson-White's possession of the disputed tract commenced long prior to the execution of the lease and it has been clearly shown that there was never any intention on the part of the lessees to include the disputed acreage in the lease or to possess same on behalf of the Allen Parker Estate or the defendant, Roy.
For these reasons we determine that McPherson-White and their ancestors in title maintained open, unequivocal and continuous corporeal possession of the disputed tract north of the tree line and east to the Man White-Zeal White fence from the year 1909 to June 14, 1978, on which latter date their possession was interrupted by the physical entry made by the defendant, Roy, on said property. Accordingly, we conclude that McPherson-White have proven each of the requisite elements set forth in LSA-C. C.P. 3658 and are entitled to a judgment of possession and a judgment for the amount deposited in the registry of court, i. e., the sum of $349.91, which represents the proceeds from the crop harvested from the above tract for the crop year 1978.[2] Further, we determine that McPherson-White are entitled to a judgment decreeing that the east and south boundaries between their property and that of the defendant, Roy, in SW/4 of SE/4 Section 4, T. 4 N., R. 6 E., is the Man White-Zeal White fence and the tree line, respectively, all as shown on the Tooke Survey filed in these proceedings as Plaintiff's Exhibit 1. Finally, we observe that the trial court taxed all costs of the proceedings in both suits to McPherson-White. We will amend the trial court judgment pursuant to authority granted us by LSA-C.C.P. Article 2164 so as to allocate all costs incurred at the trial level ½ to McPherson-White and ½ to Roy.
For the above and foregoing reasons the judgment of the trial court is amended in the following particulars:
(a) It is ordered, adjudged and decreed that McPherson-White are recognized as entitled to the possession of that portion of SW/4 of SE/4 Section 28, T. 4 N., R. 6 E., north of the tree line and west of the Man White-Zeal White fence all as is reflected by the survey of James H. Tooke, dated the 22nd day of August, 1978 and designated plaintiff's exhibit 1 in this appeal which bears our docket number 7824.
(b) Further, it is ordered, adjudged and decreed that the east and south boundary lines between the adjoining properties owned by McPherson-White and Eldred Roy in SW/4 of SE/4 Section 28, T. 4 N., R. 6 E., be and the same are hereby fixed as the Man White-Zeal White fence and the tree line, respectively, all as is reflected by the survey of James H. Tooke, above referred to.
(c) Further, it is ordered, adjudged and decreed that the sum of $349.91 held in escrow in the registry of court be paid over to McPherson-White.
(d) Finally, it is ordered that all costs of these proceedings at the trial level be paid ½ by McPherson-White and ½ by Eldred Roy.
In all other respects the judgment appealed from is affirmed. Costs of this appeal are to be borne ½ by McPherson-White and ½ by Eldred Roy.
REVERSED IN PART; AFFIRMED IN PART; AND, RENDERED.
*555 
NOTES
[1] The Tooke survey locates the ideal division line between the McPherson-White property and the Roy property as the west line of SW/4 of SE/4 Section 28, T. 4 N., R. 6 E. On appeal McPherson-White only question the correctness of this boundary, they having stipulated as to the correctness of the Tooke survey insofar as it locates the boundary lines of other adjoining properties owned by the parties in Sections 27 and 28 T. 4 N., R. 6 E.
[2] In their petition McPherson-White additionally sought damages for destruction of the old Man White-Zeal White fence as well as damages for mental anguish etc. There is no evidence in the record as to the amount of damages suffered as a result of the destruction of the fence and we find no merit in the McPherson-White claim for damages suffered as a result of mental anguish, even if such damages would be awardable under the circumstances of this case. Accordingly we reject, as did the trial court, plaintiffs' demand for these items of damage.