11 YELVERTON, J.
Mary Smith[1] was one of the plaintiffs who, on April 23, 1986, filed a suit for damages against Bishop Gerald L. Frey, The Catholic Diocese of Lafayette, other churches, and church officials. The suit was based upon allegations that a church employee, Dwight Hebert, sexually molested Mary, and committed other torts, while she was a minor.
Mary turned 18 on November 16, 1984. Because the suit was not filed until more than a year after Mary turned 18, the defendants filed a plea of prescription. The trial judge maintained the plea and dismissed the case. Mary appeals. We affirm.
On appeal, Mary argues that prescription was either interrupted by ac-knowledgement or renounced. The trial judge found that there was no factual support for finding an acknowledgement which would have interrupted prescription on or before November 16, 1985, the prescription date of Mary’s claim. This finding is not clearly wrong. At the hearing on the exception, Mary’s evidence consisted of her father’s testimony, his deposition, some documents that he had written, and a letter from the defendants’ attorney written in 1986. Mr. Smith’s deposition was 264 pages long. The evidence establishes that nothing happened before November 16, 1985, that could be construed as an acknowledgement under Louisiana Civil Code Article 3464. All of the events which plaintiff relies upon as an interruption or renunciation of prescription took place after November 16, 1985. In this case, because the petition revealed on its face that prescription had run, Mary had the burden of proving that the claim was not prescribed. Lima v. Schmidt, 595 So.2d 624 (La.1992). The trial court concluded that her evidence fell far short of sustaining her burden of proof, and we agree.
Mary’s main argument is that the defendants renounced prescription and that a letter written to her father by the defendants’ attorney in 1986 proves it. The attorney’s letter, dated April 9, 1986, was addressed to Mary’s father, and is copied here in full:
*369 Dear [Mr. Smith]:
You had contacted me about the middle of December-1985, concerning problems you and your family had been having with one Dwight Hebert. At that time, you indicated you were considering the institution of suit against the Catholic Church in connection with these problems.
You felt that it was necessary to institute suit by Christmas, since that would have been the anniversary date from which you had obtained knowledge of the matter. I advised you that I would discuss the situation with the Church officials and their insurers and would assure you that for the period of time that our discussions might continue toward the possibility of some amicable resolution of these matters, that prescription would be told [sic], i.e. suspended. It appears at this time that we are unable to reach an agreement with you which would totally resolve all issues. Father Trahan, who was present when we had these initial discussions, has asked that I write you a letter confirming the above. This letter is for the purpose of confirming that understanding. For the purposes of letting the “prescription” begin to run again, we will arbitrarily establish the date of April 23, 1986, for that purpose. This will give you several additional days for your evaluation of the matter.
I will be happy to discuss the situation with you, or your attorney, at any time. The testimony of Mr. Smith and docu-
ments that he prepared confirm that Mary’s father and the Defendants’ attorney met in late December 1985. Mr. Smith was thinking about filing suit and was concerned about prescription. The attorney told him that while negotiations for a settlement were taking place, prescription would be stopped and that he would issue a letter to Mr. Smith stating that fact. They had another meeting in February of 1986 at which time the attorney told him to “get |shis expenses together.” The claims and expenses related to Mr. Smith’s two daughters, one of which was Mary, who were the minor victims of the torts allegedly committed by the Defendants’ employee, Dwight Hebert.
As the above letter states, it became apparent by April 9, 1986, that the parties could not reach an agreement. That is why the letter was written.
The petition was filed on April 23, 1986, the date the letter said prescription would start running again. It was filed by John Smith and Jane Smith, “individually and on behalf of their minor daughters [Mary] and [Betty] Smith, and [Mary Smith], individually.” The petition ended with a prayer for relief in favor of the same plaintiffs, the parents individually and “on behalf of their minor daughters” and Mary individually. In all them prior dealings before the suit was filed, Mr. Smith was the spokesman for himself and his wife and his two daughters. He continued to speak for them long after both had attained the age of majority. In fact, Mary, by then was in her 30’s, made no appearance at the hearing of the exception of prescription in 1999. At all times before the suit was filed in 1986, Mr. Smith referred to his daughters as his minor daughters. Of course, they were minors when the alleged torts were committed. Very little activity took place in the lawsuit after it was filed, and it was not until 1992, when depositions were taken, that the Defendants discovered Mary’s birth date. The exceptions of prescription were then filed, but they were not heard until 1999.
The prescription of one year as set out in Louisiana Civil Code Article 3492 governed Mary’s claim. When she filed suit, prescription had already accrued. Because prescription may be renounced only after it has accrued, the Defendants could have renounced prescription. La.Civ.Code art. 3449. The trial court held that |4they had not renounced prescription, and that the letter of April 9, 1986, did not amount to a renunciation. We agree.
*370 “Our courts have consistently held that renunciation must be ‘clear, direct, and absolute and manifested by words or actions of the party in whose favor prescription has run’.” Lima, 595 So.2d at 631 (quoting Queen v. W & W Clarklift, Inc., 537 So.2d 1214 (La.App. 4 Cir.1989)); Bordelon’s, Inc. v. Littell, 490 So.2d 779, 781 (La.App. 3 Cir.1986); and McPherson v. Roy, 390 So.2d 543, 551 (La.App. 3 Cir.1980), writ denied, 396 So.2d 910 (La. 1981). Renunciation requires a new promise to pay the debt; a new obligation binding on the debtor is created when a promise to pay is made after prescription has accrued. Id. Far from being a new promise to pay, the letter of April 9, 1986 merely acknowledged that prescription had been tolled or suspended for awhile, and that, because negotiations for a settlement had not been successful, tolling or suspension would cease, and prescription would start running again as of the arbitrary date of April 23,1986.
There is nothing in the letter to suggest that the Defendants intended to abandon their rights derived from an accrual of prescription. Although the letter was written to Mr. Smith alone, it is clear that it was intended to be for the benefit of all four claimants, i.e., Mr. and Mrs. Smith individually and their two daughters. There was nothing in the letter to suggest that Mary’s status was any different from the others. It was reasonable for the Defendants to believe that because her father was continuing to speak for her, Mary was still a minor. Nothing in the letter suggests that the Defendants knew they had the benefit of accrued prescription as to one of the four claimants. There was no renunciation.
For the foregoing reasons, we affirm the judgment of the trial court granting the exception of prescription and dismissing Mary’s claims at her costs.
AFFIRMED.

. The names of all plaintiffs are fictitious, in compliance with La.R.S. 46:1844(W), as amended by Act 3 of the First Extraordinary Session of the Louisiana Legislature in the year 2000.